Alright, the court will now proceed to the third case, Miscevic v. Estate of M.M. Mr. Gabowski? May it please the court, counsel, my name is Mark Gabowski, I represent the appellant Anka Miscevic. This case involves a complex ERISA preemption issue, but at its heart, it involves an issue that the Illinois Supreme Court enunciated almost 125 years ago in the Holden v. Ancient Order case. The Illinois Supreme Court described the issue presented in that case, which is whether an insane person or a person adjudicated insane could receive the proceeds of a life insurance policy. And the court answered that question in the affirmative, and remarked there can be no public policy in the punishment of such persons. The court went on to hold, where an insane beneficiary in a life policy kills the assured under such circumstances as would cause the killing to be murder if the beneficiary were sane, such killing does not cause a forfeiture of the policy, nor bar his right of recovery for the insurance money. The estate of M.M. focuses on the Illinois Slayer Statute, section 2.6 of the probate code, and they focus on one case. There has only been one case that supports its position, the Daugherty v. Cole case. That case is not binding on this court, that case is not binding on any other appellate court, and the Daugherty case was wrongly decided. The statute in the Daugherty case clearly omitted what would make it applicable in this case. Unlike the Ohio statute that was cited in the Ahmaud v. Ahmaud case that we cited in our briefs, there is no particular reference or specific reference to an acquittal by reason of insanity. Mr. Dubofsky, unless we were absolutely convinced that the Illinois Supreme Court would decide the case differently, Daugherty represents the state of Illinois law on this point, and of course, Daugherty pointed out that the Illinois Supreme Court in that State Farm Life Insurance case v. Smith indicated that the beneficiary of an insurance policy who has intentionally unjustifiably killed the policyholder ought not to recover the insurance proceeds, even if she has not been convicted of murder. So what reason would we have to doubt that the Illinois Supreme Court would follow Daugherty? Well, first of all, Your Honor, the State Farm case involved somebody who did commit murder who was not found insane. Second, as I had indicated, the Daugherty case looked at what it believed was the interpretation of the statute and the intent of the legislators when the Slayer statute was amended in 1983 to encompass somebody found insane. But even the Daugherty case admitted that it was not clear from the legislative debates, and as the U.S. Supreme Court remarked in Thompson v. Thompson, it is dangerous to assume intent from a legislative debate because it creates a risk of judges not being able to prevent the implications they see from mirroring the policy they favor. But at the base of your question, Your Honor, is the ERISA preemption issue. Daugherty is completely irrelevant if Section 2.6 is preempted under ERISA. And based on the Egelhoff v. Egelhoff decision, this Court must find, as did the two State Appellate Courts, Ahmaud v. Ahmaud and Harrings v. Sentel, that the Egelhoff case reasoning clearly implies that State Slayer statutes must be deemed preempted under ERISA. And if that were to take place... I want to ask you this. Do you think that there is a legitimate distinction to be drawn here between felonious and civil intent? The State Court found that the killing was intentional and unjustified. So why wouldn't that make it clear that this statute applies even if Anka's intent was not felonious? I think that the artificial dichotomy that the District Court made between criminal liability, mens rea, and civil issues was not based on anything that the Court cited to any precedent for, nor is it consistent with any other case that has dealt with this particular issue from around the country. Every particular case, including the Holdom case, indicated that somebody who was found insane lacks the intent to commit an act that requires intent. And the Illinois statute, to the extent it is not preempted, requires that the killing be intentional and unjustified. The legislature could have stated that it included acquittal by reason of insanity. The legislator could have even excluded the language intentional and unjustified, and the estate of M.M. would be on stronger grounds if it had. But that's not what the statute says. The statute says intentional and unjustified. And in the Holdom case, the Illinois Supreme Court said that somebody who is found insane lacks fraud, malice, or design. The estate of Armstrong case from Mississippi, which surveyed every case around the country on this issue, said that willful equals intentional, and that somebody who is found insane could not have had the intent to commit the crime. And then we have the underlying facts of this case, that Ms. Miscevic believed in her mind that she was acting in self-defense when she killed her husband. And she was clearly acting under a psychotic delusion when she did so, and the circuit court in DuPage County found that the evidence clearly established that she was insane at the time of the killing by clear and convincing evidence. And therefore, she could not properly have formed the intent. The district court's dichotomy just does not exist. Intent is intent. And while there is a criminal intent that is present here, the cases that have explicitly addressed this issue have all come to the same conclusion, that somebody who is found insane lacks the intent to trigger either a state slayer law or the common law slayer rule that that state is applying. And that's really where this case comes out. So this court may find that the Illinois statute is preempted, and probably should find that the Illinois statute is preempted. But even if it is not preempted, there are so many defects in the Doherty case that the court must determine that the Doherty case cannot stand as guiding law with respect to interpretation of Section 2.6 of the Probate Code. Now, would you agree that several district courts have agreed with Judge Koukouras that the language of the court, if and when presented with the question, might conclude that state slayer statutes are not preempted by ERISA? The only case that addressed Egelhoff of all of those district court cases was the Administrative Committee case. And also the issue was raised in Life Insurance Company of North America v. CAM, decided by the Southern District of Indiana. But in those cases, the issue was not material to the outcome. The issue may very well be material to the outcome here if the court believes that Doherty is binding on this court. My time is almost exhausted, so unless there's another pending question, I would prefer to reserve my time. Thank you, Mr. Malski. Mr. Friedman. May it please the Court, Counsel, my name is Josh Friedman. I represent the appellees, the estate of M.M. and the guardian of the estate, Ms. Kaplarevic. Your Honor, I think it's telling that the appellants in their brief and in the presentation to this court have avoided a recitation of the actual facts, and I will be brief. Ms. Miskovic confessed, and it was stipulated at trial, that she stabbed her husband while he was sleeping and then bashed him in his skull with a baseball bat while he attempted to call the police. This was admitted, and she confessed again that she intended to kill her husband. Under state law, under federal law, a person may not benefit by their wrongful conduct. Illinois law, Your Honor. But how can killing be described as intentional if she was operating under a delusion and was found to be legally insane? Well, legal... And to my understanding, it was sent to some institution. Yes, Your Honor. Insanity is a legal conclusion that the person cannot appreciate under Illinois statute, cannot appreciate the criminality of the conduct. It does not address the civil issue of whether or not the defendant or the individual intended to do what he or she did. And in fact, under Illinois law, for a finding not guilty by reason of insanity to apply, there first has to be a finding by the court for all the elements of first-degree murder, which is intent to kill and unjustifiably so. So if we look at state law, Doherty is dispositive. An insane killer under Illinois state law does not take the benefits. Let's look at whether or not the state law is preemptive. Your Honors, the Egelhoff case suggests, although obviously it does not hold, that state slayer statutes are not preemptive. And Egelhoff, on its facts, is distinguishable because in that case, the law in question had a specific reference to an ERISA plan. The election of a spouse in a nonprobate asset, including an employee benefit plan, is revoked upon divorce. That is a state law that expressly referred to a benefit plan. ERISA preemption is not unlimited, and as the Egelhoff court notes, there is a presumption against preemption when you have state law, family law, statutes of general application. So in this case, under the suggestion in Egelhoff and the federal courts that have analyzed this issue, there is no preemption. And it's very clear. In this case, in the complaint, the plan document says the wife, if the person dies before retirement, the wife inherits. If the wife is dead, the child inherits. Now, would you agree, do you agree that the slayer statute operates in an identical way insofar as the ERISA plan is concerned, as the divorce statute did in Egelhoff? Well, it can. In this case, it doesn't, Your Honor. In this case, it doesn't, you say? No, because all this statute says is, is the spouse dead or alive? So the state, so any ERISA administrator would have to say, is this person dead or alive? They need to do some interpretation of state law. Is this person a spouse? Is this person dead or alive? You have to get a death certificate from a state institution. So all we're saying is, ERISA administrator, all you have to do is look at a judgment from the state criminal court. This person under Illinois law is dead. So you give the benefits to the survivor. That's all the statute is saying. It's not saying you change the retirement. I mean, it's true that the Supreme Court in Egelhoff cited some potential distinctions between the divorce statute at issue there and the slayer statutes. But I have to tell you, it seems to me the slayer statute operates in an identical way insofar as the ERISA plan is concerned, as the divorce statute did in Egelhoff. I'll go back again, but... Your Honor, in any event, under federal law, whether or not there's preemption, it's a fundamental maximum of federal common law that an individual may not benefit by his or her wrongful conduct. And if you look at the Kwasniewski, I believe it's Kwasniewski case... I mean, yes, if we consider this as a matter of federal common law, we would have to label her actions wrongful in order to bar her from any recovery. But that presumes that she had some culpability for what she did. Did she have culpability for what she did? And yes, Your Honor, she did. And if you look at the Kwasniewski case, the individual who sought to benefit by a murder was ruled by a jury to be insane and was acquitted. So we don't have felonious, we have nothing. We have someone who was acquitted. And the court said that... The court looked through the jury's finding, looked at the evidence in the case, the testimony, and that this person knew exactly what he was doing. He knew that there was no self-defense, there was no intoxication. Even though he was ruled by a jury, the court looked through it, said that, in fact, the record of the criminal proceedings in which he was acquitted of the murder charge is not binding upon this court. And he... Do you think that we have to decide that the... I mean, do you think that the... You might have responded to that. But anyway... Do you think that the best way... for you, for us, to decide this case would be on a general principle of equity? That one should not profit... from her own wrongdoing? I'm not... In light of the fact that there is another individual who may be more entitled, would that be the way? I mean, I don't know if that's the best. I'm not sure I'm prepared to make that decision. But I think that would be consistent with principles that have been placed for a very long period of time. And I think the best evidence we have here of the wrongful conduct is her own confession. And according to the Harrison case cited by the appellants... Does anything matter, including a confession, if someone is insane? Well, according to the Harrison case cited by the appellants, a confession by a person who's ruled to be insane can still be voluntarily... voluntary and knowing and valid. And so we have in her own mouth... I saw that, but it just isn't gelling in my head. I'm sorry, what's not gelling, Your Honor? That's someone who's insane. Well, an insane can be in a temporary state. All the statute says is a person is insane at the time of the killing. Let's assume that the next day she says, you know what, I knew exactly... And as she did, I knew what he was doing. I knew what I was doing. This wasn't a feather in my hand, and I thought I was tickling him, but really it was a knife, and I stabbed him. What it is is I knew he was calling the police, and I didn't want to get caught. So I butchered him. I smashed... I mean, I bashed his head in, because I didn't want to go to jail. That's not a person who's insane. There may have been a finding by the criminal court that for legal purposes she was insane, but for the purposes of federal law and the Illinois statute, Anka Miskevich was not insane. Or even if she was insane, she acted wrongfully. All the Illinois statute requires is she acted with intent, and there's no question that she intended to do what she did. This was not an accident. She intended to bash his head in to prevent him from calling the police, and it was unjustified. Whether or not she had some sort of temporary mind problem is not negative of the fact that she's admitted that her conduct was wrongful and intentional. These decisions aren't made in any scientific testimony, are they? I'm sorry? They're not based on any psychological or psychiatric testimony. Insanity? Well, insanity, yes, but periods of time where it's all right to kill. It's not all right, but it doesn't keep you from recovering proceeds if in a certain period of time that you may have been acting knowingly and intentionally. I'm sorry, Your Honor. I apologize. I'm not following. If you're acting knowingly and intentionally, wasn't that the idea? Correct. That you shouldn't, but is there any psychiatric testimony about when this knowingly and intentionally comes in and goes out? I'm not aware of that, Your Honor. So this is not based on really any scientific? This being my argument? Well, this being this whole issue that we're confronted with. Well, I mean, I think the whole issue, as Judge Rovner suggested, is equities here, and if this person truly was for the purposes of, again, we're talking about criminal versus civil, and the courts make that distinction. We're not saying that she's not free to leave. Well, that's what I'm, I guess it goes back to, is there some scientific or psychiatric decision between criminal and civil? Would they be able to divide it? I don't believe it's based on scientific or psychiatric. That's my point. I mean, it's one that the courts have created, right? That's correct, Your Honor. And could do or undo, depending on, since we're not relying on a specific scientific thing. That's correct, Your Honor. I see my time is up. Unless there's any questions, I thank you, Your Honor. Thank you, Mr. Craven. Mr. Foskey? Despite the gruesomeness of the act that counsel presented, Judge Brennan did not come by this decision lightly. He found by clear and convincing evidence based on psychiatric testimony that Anka Miscevich was insane at the time that she killed her husband. Under the Harrison case that counsel referred to, the appellate court said that somebody who's found insane, quote, cannot make an effective choice regarding her behavior. The Kwasniewski case that counsel referred to says, and I quote, murder by an insane person is an exception to the rule against permitting recovery of benefits to a person who kills another, and to whom such benefits would accrue only upon the death of the victim. So Kwasniewski supports Miscevich's position here, not the estate of MM. And finally, with respect to Egelhoff and preemption, the circumstances are not distinguishable at all. There's no statute here that says is the person dead or alive. Section 2.6 refers to disposition of property, just as the statute from Washington State that was referenced in Egelhoff. This is a law that is directed at a benefit plan. It involves a central issue of plan administration, i.e., who gets the benefits, and it interferes with national uniformity. All of those were the factors that the Supreme Court relied on in Egelhoff in finding that the Washington statute was preempted. And this court must make the same finding here as well. Thank you. Thank you, Mr. Friedman. The case is taken under advisement.